UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ANGELA GAIL ANDERSON,

v.  CASE No. 8:18-cv-2780-T-TGW

ANDREW SAUL,
Commissioner of Social Security,[1]

___

ORDER

The plaintiff in this case seeks judicial review of the denial of her claims for Social Security disability benefits and supplemental security income payments.[2] Because the decision of the Commissioner of Social Security is supported by substantial evidence and contains no reversible error, the decision will be affirmed.

I.

The plaintiff, who was fifty-four years old at the time of the administrative hearing and who has an eighth-grade education, has worked

___

[1]Andrew M. Saul became the Commissioner of Social Security on June 17, 2019, and should be substituted as the defendant. See Fed. R. Civ. P. 25(d).

[2]The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Doc. 13).

primarily as a cook and housekeeper (Tr. 42). On December 9, 2015, the plaintiff filed claims for Social Security disability benefits and supplemental security income payments, alleging that she became disabled due to triple bypass, high blood pressure, heart attack (four stents in heart), and two bulging discs and pinched nerves in back (Tr. 66–67). The plaintiff alleged she became disabled on January 1, 2008, but she later amended this date to February 19, 2011, "due to a prior hearing decision in her case dated February 18, 2011" (Doc. 17, p. 1). The claims were denied initially and upon reconsideration.

The plaintiff then requested a de novo hearing before an administrative law judge. The law judge found that the plaintiff had severe impairments of "coronary artery disease status post heart attack with stent placement and triple bypass with stent placement; hypertension; degenerative disc disease cervical and lumbar spine; and obesity" (Tr. 18). The law judge concluded that with these impairments the plaintiff was restricted to a limited range of light work (Tr. 21). Specifically, the law judge found the plaintiff (id.)

> can frequently push or pull or operate foot controls with both lower extremities. She can frequently kneel, crouch, stoop, balance, and crawl, and can

frequently climb stairs and ramps. She can never climb ladders, ropes and scaffolds, and can never be exposed to unprotected heights and moving mechanical parts. She can have occasional exposure to fumes, noxious odors, dust, mists, gases and poor ventilation. She can tolerate occasional exposure to extreme cold and extreme heat. She will be off task 10 percent of the workday and would be absent from work for 1 day per month.

As a result, the plaintiff could not perform prior work. However, based upon the testimony of a vocational expert, the law judge determined that jobs existed in significant numbers in the national economy that the plaintiff could perform, such as cashier, information clerk, and hostess (Tr. 26). Accordingly, the law judge decided that the plaintiff was not disabled. The Appeals Council let the decision of the law judge stand as the final decision of the Commissioner (Tr. 1).

II.

In order to be entitled to Social Security disability benefits and supplemental security income, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. 423(d)(1)(A),

1382c(a)(3)(A). A "physical or mental impairment," under the terms of the Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 423(d)(3), 1382c(a)(3)(D). In this case, the plaintiff must show that she became disabled before her insured status expired on March 31, 2014, in order to receive disability benefits. 42 U.S.C. 423(c)(1); Demandre v. Califano, 591 F.2d 1088, 1090 (5th Cir. 1979). There is not a similar requirement with respect to the plaintiff's claim for supplemental security income payments.

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal

of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

III.

The plaintiff raises two issues: (1) that the law judge erred in not considering the opinions of Physicians Assistant (PA) A. Scoggins and

5

Family Nurse Practitioner (FNP) C. Dwares; and (2) that the law judge's credibility determination was not proper (Doc. 17, pp. 10, 12). Neither contention has merit.

A. The plaintiff first argues that the law judge erred in failing to evaluate certain limitations stated by PA Scoggins and FNP Dwares, who saw the plaintiff in prison. While the law judge did not address those limitations in his decision, that approach does not constitute reversible error for several reasons. Thus, those statements did not constitute medical opinions under the operative regulations; they were completely devoid of explanation; and they were like limitations stated by a prison doctor that was considered by the law judge and discounted.

On March 3, 2015, PA Scoggins completed a Florida Department of Corrections Health Slip/Pass that listed the following restrictions: no pushing or pulling, no lifting greater than 5 pounds, and no prolonged standing greater than 10 minutes (Tr. 524). PA Scoggins also authorized use of a wedge pillow (id.). The restrictions and wedge pillow were to be in effect from March 3, 2015 to March 3, 2016 (see id.).

On July 12, 2015, FNP Dwares completed a Florida Department of Corrections Health Slip/Pass and a Physicians Order Sheet. It listed the

6

same restrictions—no pushing, pulling, or lifting greater than 5 pounds, and no prolonged standing greater than 10 minutes—and authorized use of a wedge pillow (see Tr. 523, 494) from July 12, 2015 to July 12, 2016.[3]

With respect to claims filed before March 27, 2017, as were the plaintiff's, the regulations provide that neither PA Scoggins nor FNP Dwares are "acceptable medical sources." 20 C.F.R. 404.1502(a)(7); 416.903(a)(7). Consequently, their statements are not considered medical opinions. 20 C.F.R. 404.1527(a)(1); 416.927(a)(1).

Moreover, neither Scoggins nor Dwares gave any explanation or justification for their restrictions. Thus, even if their statements had been medical opinions from acceptable medical sources, the law judge was entitled to discount those statements as conclusory. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). There was certainly nothing written on the health slips by either Scoggins or Dwares that would cause the law judge to give weight to the restrictions.

---

[3]The year on the second date is cut off, but presumably the restrictions were to be in effect for one year. Notably, the end of the period would be substantially after the plaintiff's prison sentence ended and she was released (Tr. 433).

7

This conclusion is confirmed by the fact that the law judge gave little weight to an opinion by Dr. Rodriguez, a prison doctor, who included similar restrictions (see Tr. 25).[4] On February 10, 2015, Dr. Rodriguez noted restrictions of no pushing, pulling, or lifting (Tr. 462). Regarding Dr. Rodriguez's opinion, the law judge stated (Tr. 25):

> The undersigned gives little weight to this opinion because it is not supported by the evidence of record. For example, at the consultative examination the claimant's grip strength testing showed that she could grip 40 pounds on the right and 60 pounds on the left. (B4F-2). In addition, the claimant had normal fine finger movements and normal range of motion (B4F-2), which is inconsistent with the limitation of no pushing, pulling, or lifting.

The law judge provided a reasonable explanation for discounting the opinion of a medical doctor. A fortiori, there is no reason to think that the law judge would give any credit to the conclusory statements from individuals who were not acceptable medical sources.

Notably, the plaintiff referred to Dr. Rodriguez's opinion in her closing statement at the hearing and in her request for review to the Appeals Council (Tr. 64, 262). There was no mention of the restrictions by

---

[4]The record does not include Dr. Rodriguez's first name.

8

Scoggins or Dwares. It seems disingenuous to not mention those restrictions to the law judge, as well as the Appeals Council, and then complain that the law judge did not consider them. Seemingly, the plaintiff did not think those statements were worth mentioning.

B. The second argument the plaintiff asserts is that the law judge's credibility determination was improper because sufficient objective evidence existed to support the plaintiff's subjective statements about her limitations (see Doc. 17, p. 14).[5] This argument also fails.

It is well-established that the responsibility for credibility determinations is reposed in the Commissioner and his determination is entitled to deference. Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005). Consequently, to overturn the Commissioner's credibility finding, the plaintiff must demonstrate that the evidence compels the contrary finding. Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc). The plaintiff's criticisms of the credibility finding do not amount to such a showing.

---

[5]The plaintiff refers to this issue as a "credibility determination," which is a term of long-standing use. The new regulations, however, do not use the word "credibility." 20 C.F.R. 404.1529, 416.929. For convenience, like the plaintiff, I will use the term "credibility determination."

At the hearing, the plaintiff testified that she stopped working due to constant pain, has difficulty understanding big words, has pain from her lower back down into her right leg, and has shooting pain from her neck down into her shoulder blades due to arthritis (see Tr. 45–46). Further, the plaintiff testified that the pain in her low back can render her immobile for two to three days, and the pain results from sleeping the wrong way or sitting or standing for too long (Tr. 46). The plaintiff stated that she can stand 20 to 30 minutes before she needs to sit down, and if she goes longer than that, she will be in bed for two to three days or in the emergency room (Tr. 47). The plaintiff said that she cannot walk one block without pain, and she would not be able to work at a job that required standing or walking for six hours (id.). She estimated that she would have to lie down three or four hours during an eight-hour workday to relieve her back pain, and she cannot lift anything heavier than a gallon of milk without pain (Tr. 48–49). She stated that she still has chest pain from heart surgeries in 2007 and 2015 (Tr. 50).

Regarding his assessment of the plaintiff's alleged symptoms, the law judge stated (Tr. 22):

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be

>expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision. Accordingly, these statements have been found to affect the claimant's ability to work only to the extent they can reasonably be accepted as consistent with the objective medical and other evidence.

This analysis is consistent with the criteria set out in the regulations. 20 C.F.R. 464.1529, 416.929.

The law judge thoroughly discussed the medical and opinion evidence in his decision (see Tr. 22–25). He ultimately found that "the totality of the evidence fails to support limitations beyond those set forth in the residual functional capacity [RFC]" (Tr. 25). The law judge explained that the RFC "is supported by medical records from treating sources, examination and evaluation reports from consulting doctors, and opinions from non-examining state agency medical consultants" (id.).

In her memorandum, the plaintiff lists pieces of medical evidence that purportedly support her subjective statements about her back and heart conditions. The plaintiff asserts that the "objective evidence in

this case was very supportive of [the plaintiff's] statements about her limitations" (Doc. 17, p. 14).

This assertion misses the point. At this stage, the issue is not whether there is evidence that would lead the law judge to find the plaintiff disabled. He obviously did not think so, and it was his decision to make. Rather, as indicated, to prevail the plaintiff has to show the evidence was so strong that it compelled the law judge to find the plaintiff was disabled.

The law judge, although not finding the plaintiff disabled, did acknowledge that she had severe impairments of coronary artery disease status post heart attack with stent placement; triple bypass with stent placement; hypertension; degenerative disc disease cervical and lumbar spine; and obesity (Tr. 18). Accordingly, he limited the plaintiff to light work with a number of functional limitations (Tr. 21). Thus, the law judge credited the plaintiff's subjective complaints to a large extent. He simply did not accept that they were disabling.

Regarding her back, the plaintiff cites to emergency department records from Winter Haven Hospital (see Tr. 359, 341). However, most recently, the plaintiff on August 29, 2017, went to the hospital complaining of chest pain (Tr. 586). Those records state that the plaintiff "had bypass

surgery in 2015 since then she has been doing well. Hasn't had any workup since 2015 since her surgery, hasn't had any recent symptoms ... [and] denies any exertional dyspnea" (id.). With respect to musculoskeletal symptoms, the records state: "No back pain, no muscle pain" (id.).

The opinions of consultative examiner Anand K. Rao, M.D., support the law judge's evaluation of the plaintiff's subjective statements. After examining the plaintiff, Dr. Rao stated that the plaintiff

> gives a history of chronic low back pain and also has recent triple bypass surgery. Because of these problems, she cannot do significant physical work at this time however her back pain is not very severe. She can do a moderate amount of work. She has no other significant disability.

(Tr. 303). While Dr. Rao's opinion could have been clearer, the law judge could reasonably construe Dr. Rao's opinion to mean that the plaintiff should be limited to light work. In this respect, the law judge stated that "Dr. Rao noted the claimant had a normal gait, she was able to heel to toe normally, and she was able to get up from the chair and onto the exam table easily" (Tr. 23; see also Tr. 24 (claimant had normal finger movements and full motion strength in all her extremities)).

13

Further, the RFC already includes limitations designed to accommodate the plaintiff's degenerative disc disease. The law judge explained that the RFC "accounts for the [plaintiff's] degenerative disc disease by limiting her to work at the light exertional level with frequent pushing, pulling or operating of foot controls" (Tr. 24). The RFC further limits the plaintiff "to frequent kneeling, crouching, stooping, balancing, crawling and climbing of ramps and stairs" (id.). Finally, the RFC does not allow the plaintiff to "climb ladders, ropes, or scaffolds or be exposed to unprotected heights and moving mechanical parts" (id.).

The plaintiff also mentions medical evidence related to her coronary artery disease. Specifically, the plaintiff cites results from diagnostic imaging of her chest performed on August 29, 2017, which suggested ischemia (see Tr. 590). However, as already set forth, supra, p. 13, the records from that visit undermine the plaintiff's claim of disability.

Just as he did with the plaintiff's back condition, the law judge also included appropriate limitations in the RFC to account for the plaintiff's coronary artery disease and hypertension. The law judge limited the plaintiff to work at the light exertional level with no climbing ladders, ropes,

or scaffolds, and only occasional exposure to fumes, noxious odors, dust, mists, gases and poor ventilation (Tr. 24).

In sum, the law judge adequately explained why he concluded that the plaintiff's extreme limitations were not consistent with the evidence of record. Since a reasonable mind could have reached that conclusion, that is sufficient under the substantial evidence test. Moreover, he explained why the functional limitations in the RFC accommodated the plaintiff's conditions to the extent he found her subjective complaints credible.

For these reasons, the plaintiff's challenges to the law judge's treatment of PA Scoggins' and FNP Dwares' statements and to the law judge's credibility determination are unavailing.

It is, therefore, upon consideration,

ORDERED:

That the decision of the Commissioner of Social Security is **AFFIRMED**. The Clerk shall enter judgment in accordance with this Order and **CLOSE** this case.

DONE and ORDERED at Tampa, Florida, this 16th day of March, 2020.

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE